```
        IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

          MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


UNITED STATES OF AMERICA      )
                              )
    v.                        )    CRIMINAL ACTION NO.
                              )        1:11cr7-MHT
PATRICIA ERVIN and            )           (WO)
MONTY ERVIN                   )
```

OPINION AND ORDER

A federal jury convicted defendants Patricia Ervin and Monty Ervin on various charges arising out of a decade-long scheme to defraud the United States of lawfully owed tax revenue. The matter is currently before the court on the defendants' motions for a new trial based on alleged juror misconduct during voir dire. For the reasons that follow, those motions will be denied.


I.  LEGAL STANDARD

Voir dire protects the right to a jury capable and willing to decide a case solely on the evidence

presented. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984). "To obtain a new trial for juror misconduct during voir dire, a party must: 1) demonstrate that a juror failed to answer honestly a material question on voir dire, and then 2) show that a correct response would have provided a valid basis for a challenge for cause." United States v. Carpa, 271 F.3d 962, 967 (11th Cir. 2001). For-cause challenges rely on juror bias. Dishonesty is itself a "strong indication of bias," and a verdict rendered in part by a biased juror "is never harmless error." Id. However, if "the juror demonstrates ... that she can lay aside any opinion she might hold and render a judgment based solely on the evidence presented in court" there can be no bias and a new trial is unwarranted. Edwards v. Hyundai Motor Mfg. Alabama, LLC, 701 F. Supp. 2d 1226, 1231 (M.D. Ala. 2010) (Thompson, J.).

2

## II.   BACKGROUND

On November 4, 2011, Patricia and Monty Ervin were convicted of tax evasion and conspiracy to defraud the United States, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 371, and Patricia Ervin was separately convicted of structuring to evade a currency-transaction reporting requirement, in violation of 31 U.S.C. § 5324(a)(3). Approximately two months after the jury reached its unanimous verdict, Curtis Malone, a witness for the prosecution, contacted members of Patricia Ervin's defense team and informed them that he had recognized one of the jurors as an individual with whom he had previously quarreled.  Malone then signed an affidavit stating that he had a "dispute" with the juror that ultimately "resulted in a heated verbal altercation" which nearly "turned physical." Affidavit (Doc. No. 232-1) at 1.  Malone also stated that, during a court recess, he "approached Assistant United States [A]ttorney, Justin Gelfand, and advised him of [that] history" and that

3

Gelfand said that he would "be required to disclose this information to the attorneys for the defendants." Id. at 2.

Defense counsel for both Patricia and Monty Ervin promptly filed motions for a new trial based on that affidavit and their insistence that neither Gelfand nor either of the other prosecutors (Michael Boteler and Todd Brown) disclosed to them Malone's relationship with the juror. The three prosecutors have since submitted affidavits that offer somewhat diverging recollections about the nature of Malone's disclosure to them and any disclosure that they made to defense counsel.

The court then made the parties aware of the name of the juror in question. (The jury had been anonymous.) A review of the voir-dire transcript revealed that the juror had admitted to knowing Malone, but said that he could remain fair and impartial during the trial. There were no follow-up questions to the juror about how he knew Malone. Nevertheless, the defendants' central

argument now is that the nature of the previous conflict between Malone and this juror demonstrates that, during voir dire, the juror must have misled this court about his ability to remain impartial.

In order to determine precisely what occurred and whether a biased juror was empaneled in this case, the court held a hearing on May 15, 2012, and heard testimony from Malone, the juror, Gelfand, Boteler, and defense attorneys Stephen Etheredge, Sr., Dustin Fowler, Derek Yarbrough, and Thomas Goggans.  See United States v. Register, 182 F.3d 820, 840 (11th Cir. 1999) (district courts have "substantial discretion in choosing the investigative procedure to be used in checking for juror misconduct").  Based on that testimony, as well as this court's observation and analysis of the witnesses' demeanor and credibility, the parties' evidentiary submissions, and oral argument on the pending new-trial motions, the court makes the following findings of fact based on a preponderance of the evidence:

(1) Witness Malone and the juror once attended the same church.  But, sometime during or prior to 1995, a disagreement emerged between them that ultimately led to Malone and his family leaving the church.  Without going into unnecessary detail, the court finds that Malone had reason to harbor animosity towards the juror as a direct result of his departure from the church.  Shortly after, Malone confronted the juror in a local parking lot, where he threatened the juror and demanded that he get out of his car, presumably so the two could fight.  The juror declined and drove off.

(2) Approximately 17 years later, Malone testified at trial in this case and recognized one of the jurors as the same man he had argued with nearly two decades earlier.  During a break in his testimony, Malone informed prosecuting attorney Gelfand that he recognized one of the jurors.  He also informed Gelfand, in very general terms, of the parking-lot altercation; however, he did not tell Gelfand about the events that led up to

the parking-lot incident.[1]  Gelfand and Boteler discussed their obligation to share this information with defense counsel, but ultimately failed to disclose it.[2]  After the

---

1. Gelfand testified at the hearing that he did not recall being informed of Malone's run-in with the juror. It is possible that Gelfand simply did not hear Malone's full statement or that he no longer remembers the details of the conversation, but the court is convinced that Malone shared more than Gelfand remembers him sharing. Malone's consistent, open, and honest testimony was fully credible and there is no reason to think that he is now exaggerating the nature of his conversation with Gelfand.

2. Although Boteler and Gelfand recall informing one or more members of one or both of the defense teams (whom they cannot remember) that Malone recognized one of the jurors, this appears to be a memory confabulation. Both prosecutors recall being told something by Malone and they both appear to take very seriously their disclosure obligations. They appear to believe honestly that they informed defense counsel of Malone's statements, but their vague recollection of what actually transpired leaves just enough room for the creation of plausible and honestly held, but ultimately inaccurate, memories. The court finds persuasive the consistent testimony of each member of the defense team that, had any disclosure been made, they would have immediately taken the issue up with the court. That assertion is consistent with the court's observation of those attorneys in previous cases and particularly powerful in this case because Patricia Ervin had previously identified the juror in question to her counsel as an individual she did not want on the jury. Her attorneys would therefore have jumped at any opportunity to replace that juror with an alternate
(continued...)

recess, Malone continued his testimony without incident, and the issue was never raised with the court.[3]

### III.  ANALYSIS

To prevail, the Ervins will have to show that the juror lied during voir dire.  Their briefing focuses on the juror's statement that he could be fair and impartial despite knowing Malone.  Given the nature of the juror's confrontation with Malone, defense counsel insists that

---

(...continued)
juror, of which there were at least three.

3.  Prosecuting attorney Todd Brown (who is now on military duty overseas) submitted a perplexing declaration that materially contradicts the testimony provided by the other prosecutors as well as that of defense counsel.  In addition, at one point he states that "the matter was addressed with the Court following the conversation among the attorneys." Declaration (Doc. No. 257-2) at 2.  That assertion is simply false.  This court does not hold off-the-record proceedings in criminal cases, and nothing in the record supports Brown's statement.  Moreover, none of the other attorneys, nor the court, recalls the issue ever being brought to this court's attention.  That misstatement, along with numerous other plainly erroneous assertions, requires this court to disregard Brown's declaration as unreliable.

the juror could not have been telling the truth about his impartiality.

This court has had the opportunity to observe the juror both during trial and during the hearing on this issue and finds that he was completely honest with this court during voir dire and was an impartial member of the jury. This factual finding rests on the nature of the juror's relationship with Malone, the staleness of the incident, and the juror's demeanor while testifying about the incident and his impartiality towards the Ervins.

First of all, the confrontation giving rise to the alleged animosity between Malone and the juror occurred approximately 17 years ago. During the May 15 hearing, Malone testified that he failed even to recognize the juror during the first portion of his testimony and that, as of now, he was willing to put the whole incident behind him, stating that he could "walk up and shake [Malone's] hand and tell him 'I'm sorry.'" More importantly, the juror repeatedly affirmed that he no

9

longer felt animosity towards Malone, stating that "life is too short" to hold grudges.  Based on this court's observations, it is clear that time has mended any wound the juror may have suffered during the earlier confrontation and the juror has moved on with his life.

Moreover, even if there were some residual anger, it would have been on Malone's part, not the juror's. Malone was the aggressor, and he is the one who harbored strong ill-will.  The juror simply drove away and refused to engage Malone at the parking lot and has since put the matter behind him.  Also, the nature of the juror-witness relationship in this case does not strongly imply bias. Unlike relationships "between a juror and defendant" that, even if remote, "can form the basis of a challenge for cause," United States v. Perkins, 748 F.2d 1519, 1532 (11th Cir. 1984), a relationship between a juror and a witness may be more tenuous and therefore less likely to result in biased deliberations.  That is particularly true in a case, like this one, where criminal defendants

10

argue that a juror harbored animosity towards a government witness. While the juror might have distrusted the government for calling Malone, the court does not believe the juror would take that out on the Ervins.

Finally, the juror was asked directly whether he was honest with the court about his ability to serve impartially and whether he did, in fact, approach the evidence with impartiality. The juror, without hesitation, made clear that he was honest about his ability to deliberate without bias and had reached a verdict based solely on the evidence presented at trial. The court carefully observed his demeanor and there can be no doubt in the juror's honesty. Indeed, throughout the May 15 hearing he was forthright, consistent, and open about both his contact with Malone and his approach to the trial. The court credits his testimony and believes that he both believed himself to be a fair juror and did indeed serve without bias. The court therefore

finds that the juror was truthful during voir dire and there is no need for a new trial.[4]

There is one last issue that must be addressed. During the May 15 hearing, the juror informed the court that he had heard of both Patricia and Monty Ervin prior to the trial and had been told by acquaintances that Monty Ervin had renounced his citizenship. Defense counsel found this revelation troubling, but it in no way undermines the court's finding above that the juror was honest during voir dire and served impartially. The information did not come out until the hearing only because the juror had not been asked those questions during voir dire. The jurors were questioned only as to whether they <u>knew</u> the Ervins or <u>heard about the case</u>, not whether they had <u>heard</u> about the Ervins in general or their political leanings. The juror honestly testified

---

4. The court adds that the Ervins were not prejudiced by the fact that there were no follow-up questions to the juror's admission at voir dire that he knew Malone. As stated, the later developed evidence reflects the juror harbored no bias against Malone and was completely fair and impartial as to the Ervins.

12

at voir dire that he did not know the Ervins.  Moreover, the juror credibly testified that he was in no way influenced by what he had heard prior to trial and judged the case based solely on the facts presented.[5]  As a result, there would have been no grounds to dismiss this juror for cause and there is no reason now to grant a new trial.[6]

***

---

5.  Patricia Ervin told her attorney, during voir dire, that the juror had seen her prior to trial.  Patricia Ervin cannot complain now about this fact because she had the opportunity during voir dire to question the juror about his knowledge of her.

6.  The court also finds that, while the prosecuting attorneys failed to inform defense counsel of Malone's comments during a recess in the trial, they did not act willfully, intentionally, or in bad faith but rather under the honestly held but mistaken belief that they had informed defense counsel.  The court also finds that the Ervins were not prejudiced by the prosecuting attorneys' failure, for the juror was not biased against the Ervins in any way.  In other words, even if the prosecuting attorneys had informed defense counsel of Malone's comments and even if defense counsel had brought the matter to the attention of the court, the Ervins would not have been entitled to have the juror replaced by an alternate, for, as stated, the juror was not biased.

**It is therefore the ORDER, JUDGMENT, and DECREE of the court that defendant Patricia Ervin's motion for new trial (doc. no. 232) and defendant Monty Ervin's motion for new trial (doc. no. 238) are denied.**

**DONE, this the 21st day of May, 2012.**

                                    /s/ Myron H. Thompson  
                                **UNITED STATES DISTRICT JUDGE**